## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 07-1658 (PLF)** |
| ) | |
| **$123,518.73 in UNITED STATES** ) | |
| **CURRENCY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| **ASHOO BHALLA &** ) | |
| **GURJEET SINGH,** ) | |
| ) | |
| **Claimants.** ) | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

***COMES NOW***, plaintiff, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully to move for summary judgment in plaintiff's favor.  The pleadings and exhibits with this motion show that there are no material facts in dispute and that, as a matter of law, the United States is entitled to judgment in its favor. Accordingly, summary judgment should be granted for plaintiff United States.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's Local Civil Rules 7(h) and 56.1, attached to this motion are: (1) a Statement Of Material Facts As To Which There Is No Genuine Dispute; (2) a Memorandum Of Points And Authorities In Support Of Plaintiff's Motion For Summary Judgment (with exhibits); and, (3) a proposed order.

Respectfully submitted,


_/s/_ _____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_/s/_ _____
WILLIAM R. COWDEN, D.C. Bar #426301
Assistant United States Attorney


_/s/_ _____
DIANE G. LUCAS, D.C. Bar #443610
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W., fourth floor
Washington, D.C. 20530
(202) 514-7912
Diane.Lucas@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of December 2007, a copy of (1) Plaintiff's Motion
For Summary Judgment, (2) Statement Of Material Facts As To Which There Is No Genuine
Dispute, (3) Memorandum Of Points And Authorities In Support Of Plaintiff's Motion For
Summary Judgment, and (4) proposed order has been served by means of the Court's ECF
system on claimants' counsel, Mr. Douglas Meister, Esq., 6801 Kenilworth Avenue, Suite 400,
Riverdale Park, MD 20737.


_/s/_ _____
DIANE LUCAS
Assistant United States Attorney

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 07-1658 (PLF)** |
| ) | |
| **$123,518.73 in UNITED STATES** ) | |
| **CURRENCY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| **ASHOO BHALLA &** ) | |
| **GURJEET SINGH,** ) | |
| ) | |
| **Claimants.** ) | |

# STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE DISPUTE

With its motion for summary judgment, plaintiff respectfully submits this statement of

material facts as to which there is no genuine dispute, pursuant to Federal Rule of Civil

Procedure 56 and Local Civil Rules 7(h) and 56.1.  Except where noted otherwise specifically, all

of the facts set forth below describe events and practices between September 5, 2006, and

January 30, 2007.  See Affidavit in Support of Application for Seizure Warrant (hereinafter,

"Seizure affidavit") at ¶ 9.

1.   On June 11, 2007, a United States Magistrate Judge in the District of Columbia issued

a warrant to seize "[a]ll funds on deposit up to $294,500 at M&T Bank, account no. xxxxxx2416

held in the name of Continental Beverage, LLC" (hereinafter, "Continental Beverage").  See

Seizure Warrant, Mag. No. 07-0284-m-01 (D.D.C. June 11, 2007).[1]

2. Execution of this warrant on June 12, 2007, resulted in the seizure of $123,518.73 in funds from the Continental Beverage account with the M&T Bank in Washington, D.C. These funds are the defendant *in rem* in this action. See Document No. 1; Affidavit of Christine Morrison (hereinafter, "Morrison affidavit") at ¶ 3.

3. Between September 5, 2006, and January 30, 2007, there were 31 separate deposits of exactly $9,500 in cash made into Continental Beverage account # xxxxxx2416. On at least thirteen occasions deposits of $9,500 were made on consecutive days. See Seizure affidavit at ¶ 10; Claimants' Answer To Complaint For Forfeiture *In Rem* (hereinafter, "Claimants' Answer") at ¶s 11, 12 and 13.

4. During the above listed time period, none of the cash deposits into Continental Beverage's M&T Bank account were greater than $10,000. See Claimants' Answer at ¶ 11.

5. Continental Beverage is a commercial enterprise, which operates a convenience store located at 1100 Vermont Avenue N.W., Washington, D.C. Continental Beverage sells liquor, lottery tickets and provides check cashing services, as well as Western Union money transfers. See Seizure affidavit at ¶ 8; Morrison affidavit at ¶ 3; Claimants' Answer at ¶ 9.

6. Between them, claimants Ashoo Bhalla (hereinafter "Mrs. Bhalla") and Gurjeet Singh

_____

[1] All statements of material facts as to which there is no genuine dispute are drawn from the two exhibits attached to this motion, and claimants' answer to the complaint. The exhibits are (1) an affidavit from Christine Morrison, a Special Agent with the Internal Revenue Service, which recounts a statement made by claimant Gurjeet Singh; (2) a copy of the affidavit sworn in support of the application for a warrant to seize the defendant funds, as it appears in this Court's official electronic files for *In the Matter of the Seizure of:* All funds on deposit up to $294,500 at M&T Bank, account number xxxxxx2416 held in the name of Contiental Beverage LLC, Mag. No. 07-284-m-01 (D.D.C. June 11, 2007).

(hereinafter "Mr. Singh") owned, controlled, and conducted Continental Beverage's business. <u>See</u> Morrison affidavit at ¶ 7; Claimants' Answer at ¶ 24.

7.  Mrs. Bhalla owns several businesses.  <u>See</u> Morrison affidavit at ¶ 8.

8.  Law enforcement agents interviewed Mr. Singh on June 12, 2007.  <u>See</u> Morrison affidavit at ¶ 6; Claimants' Answer at ¶ 16.

9.  Since becoming a partner in the business, Mr. Singh ran Continental Beverage almost entirely by himself, including from September 5, 2006 through January 20, 2007.  <u>See</u> Morrison affidavit at ¶ 8.

10.  During the relevant time period, the store had very few employees.  <u>See</u> Morrison affidavit at ¶ 12.

11.  Continental Beverage  maintained a business checking account at M&T Bank, account no. xxxxxx2416, into which nearly all of its sales revenue was deposited.  <u>See</u> Seizure affidavit at ¶ 8; Morrison affidavit at ¶s 3 and 11.

12.  Continental Beverage had a separate business account for lottery sales at Bank of America, a branch of which is located across the street from Continental Beverage.  <u>See</u> Morrison affidavit at ¶ 11.

13.  The cash deposits were mostly prepared by a store employee, I.R., and taken to M&T Bank by another store employee, J.R.[2]  <u>See</u> Morrison affidavit at ¶s 12, 13; Claimants' Answer at ¶ 16.

14.  Mr. Singh reviewed the daily cash deposits.  <u>See</u> Morrison affidavit at ¶ 12; Claimants' Answer at ¶ 16.

---

[2]  For privacy reasons, the plaintiff refers to employees by their initials.

15.  Mr. Singh knew that if an amount of cash in excess of $10,000 was deposited into Continental Beverage's M&T Bank account in a single transaction, a written Currency Transaction Report (CTR) was required to be filed.  <u>See</u> Morrison affidavit at ¶s 13, 15.

16.  Mr. Singh made sure that Continental Beverage's cash deposits did not exceed $10,000 because a cash deposit of more than $10,000 would require filing a CTR form which, he said he did not want his employee to have to deal with.  <u>See</u> Morrison affidavit at ¶ 13.

17.  When confronted with a CTR that had been completed at Bank of America in relation to Continental Beverage's lottery account when the employee, J.R., made a deposit, Mr. Singh explained that the lottery account rarely had cash deposits over $10,000 and that it happened very infrequently.  <u>See</u> Morrison affidavit at ¶ 17.

18.  Mr. Singh acknowledged that deposits at M&T Bank would have been frequently in excess of $10,000, if he had not withheld cash to avoid triggering a CTR filing.  <u>See</u> Morrison affidavit at ¶ 17.

19.  No other party has filed a claim or pleading challenging the forfeiture of the defendant currency, and the time for filing a claim has expired.  <u>See</u> 18 U.S.C. § 983(a)(4)(A).

Respectfully submitted,

_/s/ _____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_/s/_____
WILLIAM R. COWDEN, D.C. Bar #426301
Assistant United States Attorney

_/s/_____
DIANE G. LUCAS, D.C. Bar #443610
Assistant United States Attorney

-4-

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

$123,518.73 in UNITED STATES CURRENCY,

    Defendant.
_____

ASHOO BHALLA & GURJEET SINGH,

    Claimants.
_____

Case No. 07-1658 (PLF)

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
### OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

  Plaintiff respectfully submits this memorandum in support of its motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rules 56.1 and 7(h). Based upon plaintiff's statement of material facts that are not in genuine dispute, summary judgment for forfeiture should be granted in plaintiff's favor as a matter of law.

### I.  BACKGROUND

  This is a civil action *in rem* to forfeit to the U.S. government $123,518.73 seized on June 12, 2007, from a bank account at M&T Bank, account #xxxxxx2416, held in the name of Continental Beverage LLC ("Continental Beverage"). Continental Beverage is a convenience store located at 1100 Vermont avenue, N.W., in Washington, D.C. Although Ashoo Bhalla ("Mrs. Bhalla") and Gurjeet Singh ("Mr. Bhalla") filed claims in this action to oppose forfeiture of the defendant funds, Continental Beverage, the corporate owner of the defendant funds, did

not file a timely claim or answer to the complaint.

Plaintiff United States filed this action on September 19, 2007, alleging that the defendant funds were property involved in violations of 31 U.S.C. §§ 5324(a)(1) and 5324(a)(3).  <u>See</u> Document No. 1.[3]  These sections make it a crime to cause or try to cause a bank to fail to file a Currency Transaction Report (CTR) and to structure cash deposits to evade the requirement to file a CTR, respectively.  Together, 31 U.S.C. § 5313(a), and Title 31, Code of Federal Regulations, Part 103, require that a CTR be filed whenever a cash deposit of more than $10,000 is made at a "domestic financial institution."  Property involved in a violation of 31 U.S.C. § 5313 is subject to civil forfeiture under 31 U.S.C. § 5317(c)(2).  On November 6, 2007, claimants filed a combined Verified Claim and Answer to Complaint for Forfeiture <u>In Rem</u>.  <u>See</u> Document No. 2.

Summary judgment in plaintiff's favor is warranted because Mr. Singh, a partner of Continental Beverage, and the individual who ran the business, admitted that he deliberately structured cash deposits into Continental Beverage's M&T Bank account in order to avoid causing a CTR to be filed.  He said he did so to save time-- but his "excuse" is an admission, not a defense.  Mr. Singh's admission binds the corporation.  <u>See</u> <u>United States v. Bank of New England</u>, N.A., 821 F. 2d 844, 856 (1st Cir. 1987) (knowledge of employee imputed to corporation).  Because there is no question that the deposited funds were structured, and because Mr. Singh's knew of the CTR requirement and intended to avoid the CTR requirement by keeping cash deposits below $10,000, summary judgement is required.

---

[3] "Document No." refers to the docket number assigned to the electronically-filed documents in the instant matter.

## II.  LEGAL STANDARDS

### A.  <u>Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure requires summary judgment to be "granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is an integral part of the overall design of the rules of civil procedure, which is to secure the just, speedy, and inexpensive determination of every action, not a disfavored procedural shortcut.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986).  "One of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." <u>Id.</u> at 323-324.

The moving party is entitled to summary judgment "where the non-moving party has failed to make a sufficient showing on an essential element of [his or her] case to which [he or she] has the burden of proof."  <u>Id.</u> at 323.  Any factual assertions contained in affidavits and other evidence in support of the moving party's motion for summary judgment shall be accepted as true unless the facts are controverted by the non-moving party through affidavits or other documentary evidence.  <u>See</u> Fed. R. Civ. P. 56(e).

The party moving for summary judgment bears the initial responsibility of informing the trial court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  <u>Alexis v. District of Columbia</u>, 44 F. Supp.2d 331, 337 (D.D.C. 1999); <u>see</u> <u>also</u> <u>Celotex v. Catrett</u>, <u>supra</u>, 477 U.S. at 323.  When the moving party has carried its burden, the responsibility shifts to the nonmoving party to show that

there actually is a genuine issue of material fact for trial.  See <u>Alexis v. District of Columbia</u>,

<u>supra</u>, 44 F. Supp.2d at 337.  The opposing party must provide "specific facts showing that there

is a genuine issue for trial," and "may not rely on mere allegations or denials to prevail."  <u>Id.</u>  The

trial court must enter summary judgment against a nonmoving party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which the

party will bear the burden of proof at trial.  See <u>Celotex v. Catrett</u>, <u>supra</u>, 477 U.S. at 322; <u>see</u>

<u>also</u> <u>Alexis v. District of Columbia</u>, <u>supra</u>, 44 F. Supp.2d at 337 ("Rule 56(c) *mandates* summary

judgment" in this circumstance) (emphasis added).

   "A party may not create a *genuine* issue of fact by contradicting his own earlier

statements, at least [not] without a plausible explanation for the sudden change of heart."  <u>Cook</u>

<u>v. Babbit</u>, 819 F. Supp. 1, 21 (D.D.C. 1993) (quoting <u>Richardson v. Bonas</u>, 860 F.2d 1427, 1433

(7th Cir. 1988)) (emphasis in original).  "While it is not the function of the court on summary

judgment to weigh evidence or determine credibility issues between different witnesses or

parties, . . . the rejection of statements that are implausible and contrary to other statements made

*by the same person* is 'not a credibility determination but rather [the] recognition of a sham

issue.'"  <u>Id.</u> (quoting <u>Camfield Tires, Inc. v. Michelin Tire Corp.</u>, 719 F.2d 1361, 1365 (8th Cir.

1983)).

### B.  CTR, Structure, and Forfeiture Law

   "Federal law requires financial institutions to file Currency Transaction Reports with the

Secretary of the Treasury for cash transactions in excess of $10,000."  <u>United States v. Wynn</u>, 61

F.3d  921, 927 (D.C. Cir. 1995).  In 1986, Congress explicitly prohibited persons from

"structuring" cash transactions with banks so that no one transaction exceeds $10,000 in an effort

to avoid CTR filings.  See United States v. McPherson, 424 F.3d 183, 188 (2d Cir. 2005) (citing

31 U.S.C. § 5324).[4]

Such "structuring" is a violation of 32 U.S.C. § 5324(a)(3).  Similarly, causing or

attempting to cause a bank to fail to file a required CTR violates § 5324(a)(1).  "*No criminal*

*predicate as to the source of cash* in excess of $10,000" is needed to show a wilful failure to

---

[4]  Congress enacted this CTR reporting requirement in 1970 in the Currency and Foreign Transactions Report Act (CFTRA), Pub. L. No. 91-508, 84 Stat. 1118, also referred to as the "Bank Secrecy Act."  See United States v. McPherson, 424 F.3d 183, 188 (2d Cir. 2005).  The CTR requirement currently is codified at 31 U.S.C. § 5313(a) and implemented through regulations at 31 C.F.R. § 103.22(b).  Id.

Title 31, U.S.C. § 5313.  **Reports on domestic coins and currency transactions**, states:

> (a) When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency . . . in an amount . . . the Secretary prescribes by regulation, the institution and any other participant in the transaction . . . shall file a report on the transaction . . . .

Federal regulations at 31 C.F.R. § 103.22(b), require each "financial institution other than a casino [to] file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000 . . . ."

Congress criminalized "structuring" and attempts to evade the CTR requirement in the Money Laundering Control Act, Pub. L. No. 99-570, 100 Stat. 3207.  See United States v. McPherson, supra, 424 F.3d at 188.  This has been codified at 31 U.S.C. § 5324.  **Structuring transactions to evade reporting requirement prohibited**, which states:

> (a) **Domestic coin and currency transactions involving financial institutions** - No person shall, for the purpose of evading the reporting requirements of Sections 5313(a) . . .
> > (1) cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a) . . . or any regulation prescribed under [§5313(a)] . . . ;
> > (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

comply with the reporting requirement.  See United States v. McPherson, supra, 424 F.3d at 188 (emphasis supplied).

To prove a structuring violation, the evidence need not show that a "defendant acted with knowledge that his conduct was unlawful" as had been held in Ratzlaf v. United States, 510 U.S. 135, 137 (1994).  After Ratzlaf, in 1994, Congress eliminated "wilfulness as an element necessary" to prove "structuring in violation of § 5324."  United States v. McPherson, supra, 424 F.3d at 189; see also United States v. Pang, 362 F.3d 1187, 1194-1195 (9th Cir. 2004) (government need not prove that defendant knew structuring was illegal; it is sufficient to prove intent to evade the reporting requirement); United States v. Wynn, supra, 61 F.3d at 928 (concluding that wilfulness is not an element of structuring offense following 1994 amendment to § 5324).[5]

"Any property involved" in such violations of § 5324, and "any property traceable to any such violation . . . may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money-laundering cases . . . ."  31 U.S.C. § 5317(c)(2). The government may "obtain forfeiture of assets involved in a transaction that was illegally structured under § 5324 even when no individual" can be held criminally liable for the illegal transaction.  United States v. Ahmad, 213 F.3d 805, 809 (4th Cir. 2000) (even before Congress eliminated the wilfulness element from criminal statute proscribing structuring, Congress had

---

[5]  Wynn noted that buying "money orders at three separate banks tends to prove knowledge of illegality" of structuring.  United States v. Wynn, supra, 61 F.3d at 928 (citing United States v. Marder, 48 F.3d 564, 574 (1st Cir. 1995).  Similarly, Wynn noted that "a defendant's scheme to enlist family members to purchase numerous money orders and cashier's checks in small denominations" may sustain a conviction for wilful structuring.  United States v. Wynn, supra, 61 F.3d at 928 (citing United States v. Walker, 25 F.3d 540, 543, 548 n. 8 (7th Cir. 1994)).

authorized civil forfeiture of structured funds without proof of wilfulness).

When the government seeks to forfeit fungible property, such as funds in a bank account into which cash deposits have been structured, 18 U.S.C. § 984 authorizes forfeiture of "identical property found in the same place or account as the property involved" in the structuring or CTR reporting violation.  See 18 U.S.C. § 984(a)(2).  The government need not "identify the specific property involved in the offense that is the basis for the forfeiture" when seeking to forfeit "funds deposited in an account in a financial institution."  18 U.S.C. § 984(a)(1)(A).  Nor may claimants oppose a forfeiture because the "property involved in such an offense has been removed and replaced by identical property."  18 U.S.C. § 984(a)(1)(B).[6]

To make out a structuring violation as a predicate for the forfeiture of the structured funds, the evidence must prove that: (1) someone engaged in the acts of structuring; (2) the person(s) must have done so with the knowledge that the bank involved was obligated to report cash deposits in excess of $10,000; and (3) the structurer must have acted with the intent to evade the CTR reporting requirement.  See United States v. McPherson, supra, 424 F.3d at 189.

### C.  **Agency Principles**

"[T]he knowledge obtained by corporate employees acting within the scope of their

---

[6] But, subsection 984(b) sets an outer limit on the time to commence such a forfeiture under the presumption that the statute provides.  It requires that an action to forfeit the fungible property take place within one year of the offense giving rise to the forfeiture of property involved in the offense.  In this case the government has met this one-year limitation.  This action seeks to forfeit funds based on structured deposits first made on September 5, 2006, and lasting through January 30, 2007.  Government agents seized the funds at issue on June 12, 2007, fewer than twelve months after the first structured deposit at issue in this matter.  Further, claimants have admitted that 31 deposits of exactly $9,500 in cash occurred between September 5, 2006, and January 30, 2007, a total of $294,500.  See Claimants' Answer, ¶s 11, 12, and 13.  The defendant funds seized on June 12, 2007, $123,518.73, amount to less than half of the value of the property actually structured by claimants.

employment is imputed to the corporation." United States v. Philip Morris USA, Inc., 449 F.

Supp.2d 1, 894 (D.D.C. 2006) (citing, United States v. Bank of New England, N.A., 821 F.2d at

855-856.)  In United States v. Bank of New England, N.A., the First Circuit held that the

collective knowledge instruction was "entirely appropriate in the context of corporate criminal

liability."  Id. at 856.  "[T]he reason that courts impose constructive knowledge upon the

principal 'is to avoid the injustice which would result if the principal could have an agent

conduct business for him and at the same time shield himself from the consequences which

would ensue from knowledge of conditions or notices of the rights and interests of others had the

principal transacted his own business in person.'"  United States v. Philip Morris USA, Inc., 449

F. Supp.2d at 894 (citing, First Alabama Bank, N.A. v. First State Insurance Co., 899 F.2d 1045,

1060 n. 8 (11th Cir. 1990)).  See also United States v. Sun-Diamond Growers of California, 964

F. Supp. 486, 491 n. 10 (D.D.C. 1997), *reversed on other grounds*, 128 F.3d 961 (D.C. Cir.

1998) ("However, knowledge obtained by a corporate agent acting within the scope of his

employment is imputed to the corporation."); Apex Oil Co. v. United States, 530 F.2d 1291,

1295 (8th Cir. 1976) ("the knowledge of the employee is the knowledge of the corporation.");

"[A] principal is held responsible for the knowledge acquired by its agent even if the information

is never communicated to it."  United States v. Philip Morris USA, Inc., 449 F. Supp.2d at 895

(citations omitted.)

        Corporate officer knowledge has been attributed to corporations in forfeiture cases to

defeat a claim that the corporation had no knowledge.  In United States v. 141st Street Corp., 911

F.2d 870, 876-77 (2nd Cir. 199), the Second Circuit found that a corporate officer's knowledge of

drug trafficking in a corporate building could be imputed to the corporation.  See also United

States v. One Parcel Known at 352 Northup St., 40 F. Supp.2d 74, 82 (D.R.I. 1999) (corporate

interest forfeited because principal shareholder knew property was purchased with drug

proceeds.)

## III.  ARGUMENT

Claimants' Answer raises one defense, which does not present a genuinely disputed

material fact and lacks merit in the law.  Specifically, claimants "deny any wrongdoing or

knowing violation of federal statutes as stated in the Complaint."  See Claimant's Answer at ¶

24.  Congress, however, eliminated the "knowing" requirement that a "defendant acted with

knowledge that his conduct was unlawful."  See United States v. McPherson, supra, 424 F.3d at

188-189.  The "wilfulness" of the conduct is no longer an element in the crime of structuring.

Id.; see United States v. Pang, supra, 362 F.3d at 1194-1195 ("the prosecution . . . 'does not need

to also prove that the defendant knew that structuring was illegal.'"); United States v. Wynn,

supra, 61 F.3d at 928.  Thus, claimants' defense lacks merit.

The owner of the defendant funds is Continental Beverage, a corporate entity.  See

Claimants' Answer at ¶ 24.  Indeed, the funds were seized from a corporate bank account.  Id.

Mr. Singh was a principal owner of Continental Beverage.  Id.  The fact that another owner may

have been unaware of the structuring is irrelevant because Mr. Singh's knowledge, intent and

actions bind the corporation here.[7]  Mr. Singh's admissions of his knowledge and intent related to

the CTR requirements are attributable to the corporation.

_____

[7]  The plaintiff does not need to prove that both Mr. Singh and Mrs. Bhalla had knowledge
of the CTR requirement and intended to thwart the filing of CTR when Continental Beverage's cash
deposits were structured.  It is sufficient to prove that one of them had such knowledge and intent.

Here, there is no question that between September 5, 2006 and January 30, 2007, Continental Beverage structured thirty-one (31) separate cash deposits of $9,500 totaling $294,500 into Continental Beverage's M&T Bank account.  See Statement of Material Facts As To Which There Is No Genuine Dispute (hereinafter "Facts") at ¶ 3.  On at least thirteen occasions, deposits of $9,500 were made on consecutive days.  Id.  During the above listed time period, none of the cash deposits into Continental Beverage's M&T Bank account were greater then $10,000.  See Facts at ¶ 4.  Thus, there is ample evidence that some employee and/or officer structured cash deposits into Continental Beverage's account.  Thus, the first element of a structuring violation is proven and is not in dispute.

The second and third elements of a structuring violation:  1) that the structuring was done with the knowledge that the bank was obligated to report cash deposits in excess of $10,000; and 2) that it was done with the intent to evade the filing of a CTR, are proven by Mr. Singh's own admission that Continental Beverage kept the deposits under $10,000 so that the employee who made the deposits would not have to deal with filling out the form.  See Facts at ¶ 16.  When confronted with a CTR that had been prepared at Bank of America in relation to Continental Beverage's lottery account when the same employee made a deposit, Mr. Singh explained that the lottery account rarely had cash deposits over $10,000 and that it happened very infrequently. See Facts at ¶ 17.  Mr. Singh further stated that the cash deposits to the M&T Bank account would have been frequently over $10,000.  See Facts at ¶ 18.

Because Mr. Singh is an owner of Continental Beverage, his knowledge that the bank would be required to prepare a CTR if a deposit were in excess of $10,000, and his intent to structure the cash deposits to avoid the preparation of a CTR form, are attributed to the

corporation.  The fact that the structuring was an effort to save time, as opposed to a more sinister reason, is irrelevant to a structuring violation because the rationale or motive for structuring cash deposits is not an element of the violation.  See United States v. McPherson, supra, 424 F.3d at 185, n. 2.

     *WHEREFORE*, for the foregoing reasons, the plaintiff United States respectfully prays this Honorable Court to grant its motion for summary judgment in its favor on its Complaint for Forfeiture of the $123,518.73 in United States currency.[8]

                             Respectfully submitted,


                             _/s/_ _____
                             JEFFREY A. TAYLOR, D.C. Bar #498610
                             United States Attorney


                             _/s/_____
                             WILLIAM R. COWDEN, D.C. Bar #426301
                             Assistant United States Attorney


                             _/s/_____
                             DIANE G. LUCAS, D.C. Bar #443610
                             Assistant United States Attorney

---

[8] A decision to grant plaintiff's Motion for Summary Judgment will allow plaintiff to prepare a final order of forfeiture in the instant matter.

## AFFIDAVIT

    1.  As affiant, I state that I am Christine M. Morrison, Special Agent of the Internal Revenue Service, Criminal Investigation.  I make this affidavit, intending it to be a sworn statement under oath in contemplation of the penalty of perjury, in connection with a motion for summary judgment being filed by the plaintiff United States Government in the case of <u>United States v. $123,518.73 in U.S. Currency</u>, Civ. Act. 07-1658 (PLF).

    2.  I have been a Special Agent since 2002.  I am currently assigned to the Internal Revenue Service-Criminal Investigation (IRS-CI) office in the District of Columbia wherein part of our mission is to identify and investigate possible money laundering and currency structuring violations, specifically, violations of 18 U.S.C. §§ 1956, 1957, and 1960 and 31 U.S.C. §§ 5316, 5324, and 5330.

    3.  I participated in the investigation which resulted in the application on June 11, 2007 for a warrant to seize the funds in a bank account maintained at the M&T Bank, on behalf of an entity known as Continental Beverage LLC ("Continental Beverage"), which runs a convenience store in Washington, D.C.  On June 12, 2007, a seizure warrant issued by the United States District Court for the District of Columbia, was executed, which resulted in the seizure of $123,518.73 in funds from the Continental Beverage account with the M&T Bank in Washington, D.C.  These funds are the defendant *in rem* in this action.

    4.  I was present for interview with Gurjeet Singh, which took place on June 12, 2007

    5.  Following the interview of Mr. Singh, a Memorandum of Interview ("MOI") was prepared, recounting the statement made by Mr. Singh.  I reviewed the MOI when written, and I have reviewed it again shortly before making this affidavit.  The MOI accurately and truthfully recounts the remarks that Mr. Singh made during his interview.  In making this affidavit, I have omitted some of what is recounted in the written MOI, because it is not relevant to the motion for summary judgment.  Further, I have omitted the names of certain persons, and certain other information given about them during the interviews, to protect their privacy.  This affidavit also does not recount everything learned during the investigation into Continental Beverage deposit-structuring, but rather states only what was said during the interview with Mr. Singh.  With regard to that interview, I state the following:

**Interview of Mr. Gurjeet Singh, on June 12, 2007**.

    6.  On June 12, 2007 at about 4;15 p.m., Criminal Investigator Diane Eickman of the United States Attorney's Office and I interviewed Mr. Singh.  This interview took place the same day as the seizure of the Continental Beverage M&T Bank account # xxxxxx2416.

    7.  Mr. Singh began the interview by stating that he was part owner in Continental Beverage and that the other owners were Ashoo and Sanjeev Bhalla, whom are married.

    8.  Mr. Singh stated that the Bhallas own several businesses and are never at Continental

Beverage.

9.  Mr. Singh stated that he became a part-owner two to three years ago and that he sold his interest in the business as of June 1, 2007.

10.  Mr. Singh confirmed that Continental Beverage maintained an account at M&T Bank.

11.  Mr. Singh stated that when he joined the business it had five separate bank accounts (check cashing, Lottery, Western Union, ATM transaction and sales).  Mr. Singh said that he combined four of the accounts and left the Lottery account separate because the Lottery required a separate account.

12.  Mr. Singh stated Continental Beverage had three employees and that employee, I.R., was responsible for preparing the deposits.  Mr. Singh said he reviewed the deposits once he arrived at work around 12:30 p.m.

13.  Mr. Singh was shown a summary of Continental Beverage's cash deposits in the M&T Bank account.  Mr. Singh stated that they kept the deposits under $10,000 since the employee who made the deposits, (J.R.), would have to fill out a form.  He further stated that the employee did not have proper identification to fill out the form at the bank.  Therefore, to make it easier on the employee, they kept the deposits under $10,000.

14.  Mr. Singh could not remember who came up with the $9,500 amount for the deposits.

15.  Mr. Singh admitted that a Western Union agent had talked to him about Currency Transaction Reports ("CTR").  He believed that an individual at M&T Bank was the first person who talked to him about CTR requirements.

16.  Mr. Singh acknowledged that he had been contacted by the managers of the Potomac branch of M&T Bank over the last few months and recalled being asked about third party checks cashed by the business.

17.  Mr. Singh was shown a CTR filled out at Bank of America ("BOA") related to a deposit made by J.R., the same employee that made Continental Beverage's deposits into the M&T Bank account.  When asked what the difference was when the employee made deposits at BOA versus deposits at M&T Bank, Mr. Singh stated that the Lottery account rarely had cash deposits over $10,000 and that it happened very infrequently.  Mr. Singh acknowledged that the deposits at M&T Bank would have been frequently in excess of $10,000.  Mr. Singh said that the physical safety of the person who carried the deposit to the bank was also taken into consideration when determining the amount of the deposit.

2

This interview ended at about 5:00 p.m.

Further than this, affiant sayeth not.

I, Christine M. Morrison, a Special Agent with the Internal Revenue Service, have made this affidavit under penalty of perjury and declare that everything contained in this affidavit is true and correct to the best of my knowledge and belief.

Executed on this _____ day of December, 2007.

_/s/_____
Christine M. Morrison

## REDACTED AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEIZURE WARRANT

### Background

I, Christine M. Morrison, being duly sworn, depose and state as follows:

1.    I am a Special Agent of the Internal Revenue Service, Criminal Investigation and have been so employed since August, 2002.   I am currently assigned to the Internal Revenue Service-Criminal Investigation (IRS-CI) office in the District of Columbia wherein part of our mission is to identify and investigate possible money laundering and currency structuring violations, specifically, violations of 18 U.S.C. §§ 1956, 1957, and 1960 and 31 U.S.C. §§ 5316, 5324, and 5330.   As a Special Agent, I completed Special Agent Training at the Federal Law Enforcement Training Center in Brunswick, Georgia, which included lessons in criminal and financial investigative techniques, criminal law, search and seizure warrants.   These types of investigations have focused on individuals who derive income from legal as well as illegal sources.   Unless otherwise stated, the information in this affidavit is either personally known to me or has been provided to me by other law enforcement officers and/or is based on a review of various documents and records as more particularly described herein.

### Property for Seizure

2.    This affidavit supports an application for a seizure warrant for all monies and other things of value up to the amount $294,500, that are contained in account number xxxxxx2416 held in the name of Continental Beverage LLC at M&T Bank.   The account was opened at the M&T Bank branch located at 10128 River Road in Potomac, Maryland. Cash deposits to this account were made at the M&T Bank branch located at 1680 K Street, NW, Washington, D.C.   Probable cause exists to believe that such monies are

subject to seizure and forfeiture to the United States pursuant to 31 U.S.C. §5317(c)(2)

(incorporating 18 U.S.C. §§ 981 and 984), because these monies constitute property

involved in, or traceable to, deposits structured to evade currency reporting requirements,

in violations of 31 U.S.C. § 5324(a) or these funds may be seized in place of such

property, because they represent the same or fungible property found in the same place

or account from which the property involved in the offense was deposited, within the one

year period after September 5, 2006.

### Legal Authority for Seizure

3.    Title 31, United States Code, Section 5313 and the regulations promulgated by

the Department of Treasury at 31 C.F.R. Part 103, *et seq.*, require financial institutions

that engage with customers in a currency transaction (i.e. a deposit or withdrawal) in

excess of $10,000 to report the transactions to the Internal Revenue Service on FINCEN

Form 104 (formerly Form 4789), which is known as a Currency Transaction Report

("CTR").   These regulations also require that multiple transactions be treated as a single

transaction if the financial institution has knowledge that the multiple transactions are

being made by, or on behalf of, the same person and they result in either currency

received or disbursed by the financial institution of more than $10,000 during any one

business day.

4.    CTRs are often used by law enforcement to uncover a variety of illegal

activities, including narcotics trafficking, money laundering, terrorist financing, and tax

evasion.   Many individuals involved in these types of illegal activities are aware of such

reporting requirements and take active steps to prevent financial institutions from filing

CTRs.  These active steps are referred to as "structuring" or "smurfing" and involve, among other methods, a person or persons making multiple cash deposits, in amounts of or less than $10,000, to multiple banks and/or branches of the same bank on the same day or on consecutive days.  Structuring cash deposits to evade financial reporting requirements is prohibited by 31 U.S.C. § 5324(a)(3).

5.  In order to establish a violation of 31 U.S.C. § 5324(a), the government must prove that a person structured or assisted in structuring, or attempted to structure or assist in structuring, any transaction with one or more domestic financial institutions in amounts no greater than $10,000 for the purpose of evading the reporting requirements of section 5313(a) or any regulation prescribed under such sections.

6.  Title 31 U.S.C. § 5317 provides for the civil forfeiture of any property involved in a violation of sections 5313, 5316, or 5324 of that title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy; it is further provided that the property shall be forfeited in accordance with the procedures governing money laundering forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

7.  Title 18 U.S.C. § 984 provides that, in any forfeiture action *in rem* in which the subject property is cash [or] funds deposited into a financial institution, the government does not have to identify the specific property involved in the offense that is the basis for the forfeiture; it is no defense that said property has been removed and replaced by identical property; and identical property found in the same account as the property involved in the forfeiture offense are subject to forfeiture.  In essence, § 984 allows the government to seize for civil forfeiture identical property found in the same place where

the "guilty" property had been kept.    However, § 984 does not allow the government to reach back in time for additional period; a forfeiture action against property not directly traceable to the offense that is the basis for the forfeiture cannot be commenced more than one year from the date of the offense.

### Facts Supporting Probable Cause

8.    Continental Beverage LLC filed its Articles of Organization with the District of Columbia on April 8, 1999.    Continental Beverage LLC has account number xxxxxx2416 in its name at M & T Bank.    Records obtained from M&T Bank for account number xxxxxx2416 identify Ashoo Bhalla, Sanjeev Bhalla and Gurjeet Singh as the authorized signers for this account.    The bank account was opened at the M&T Bank branch located at 10128 River Road in Potomac, Maryland.    However, cash deposits to the account were conducted at the M&T Bank branch located at 1680 K Street, N.W., in Washington, D.C.    Continental Beverage LLC, d/b/a Continental Wine & Liquor, conducts business as a convenience store at 1100 Vermont Avenue, NW, Washington, D.C. 20005.    Among other things, the convenience store sells liquor and lottery tickets.    The convenience store also provides check cashing services as well as Western Union money transfers.

9.    I have personally examined M&T Bank records related to account number xxxxxx2416.    My examination of the banking activity of Continental Beverage LLC from September 5, 2006 through January 30, 2007, revealed that no single cash deposit ever exceeded $10,000.

10.    The attached Exhibit A details the cash deposit activities of the above-named account for the above referenced periods of time.    Funds totaling $294,500 were

4

deposited into the account for the period of time referenced above.   I was able to identify and confirm that approximately 31 deposits totaling $294,500 were deposited in the form of cash.   Each of the 31 cash deposits was in the amount of $9,500.   On at least 13 occasions, deposits of amounts under the $10,000 threshold were made on consecutive days.   For example, for five consecutive days between September 11, 2006 and September 15, 2006, cash deposits in the amount of $9,500 were made.   In addition, on January 22, 2007 and January 23, 2007, cash deposits in the amount of $9,500 were made.   The cash deposits reflected in Exhibit A show that there were days when Continental Beverage LLC had no cash deposit for the day.   For instance, there were no cash deposits made on Tuesday, September 19, 2006 or Wednesday, September 20, 2006.

11.    Based on my training and experience, I know that multiple cash deposits in amounts ranging between $9,000 and $10,000 over a short period of time can indicate the breaking up of a larger amount of money into smaller deposits to avoid triggering the filing of a CTR (mandatory for amounts in excess of $10,000).   In short, this kind of activity is indicative of structuring.   Based on my experience, there is probable cause to believe that the business is accumulating cash and depositing it piecemeal in such a manner so as to not trigger a CTR.

12.    Interviews were conducted with the former branch manager and three tellers of the M&T Bank branch located at 1680 K Street, N.W., Washington, D.C.   All four individuals recognized a photograph that depicted Gurjeet Singh and only one of the tellers recognized a photograph that depicted Ashoo Bhalla.   All four individuals advised

that Gurjeet Singh was known as "Gary."   The then branch manager advised that shortly after the account was opened Gurjeet Singh introduced himself to her.   It was the branch manager's recollection that a runner/courier usually brought the deposits to the branch on behalf of Gary and that the runner/courier dealt only with the tellers.   One teller advised that Gurjeet Singh occasionally brought deposits for the account of Continental Beverage LLC to the branch and that on most occasions, deposits were brought to the branch by an unknown man.

13.    Surveillance photographs were obtained from the branch of M&T Bank located at 1680 K Street, NW, Washington, DC.   These photographs depict the individual who made cash deposits, each in the amount of $9,500, to the account of Continental Beverage LLC on March 26, 2007, April 2, 2007, April 3, 2007, April 4, 2007 and April 9, 2007.   Your affiant compared these photographs with a photograph obtained from Maryland's Department of Motor Vehicle that depicts J.R.     It is your affiant's belief that the bank surveillance photographs depict J.R.

14.    The photograph obtained from Maryland's Department of Motor Vehicle that depicts J.R. was shown to branch personnel of M&T Bank located at 1680 K Street, NW, Washington, DC.     At least three branch personnel identified J.R. as the man who made the deposits into the account of Continental Beverage LLC.

15.    Between February 21, 2006 and March 12, 2007, three CTRs were filed related to deposits of cash in excess of $10,000 into a bank account held in the name of Continental Beverage LLC at a branch of Bank of America, located at 1090 Vermont Avenue, NW, in Washington, DC.   Of the three CTRs, two listed J.R. as the transactor.

16. On January 10, 2005, M&T Bank filed a CTR following multiple deposits of cash that exceeded $10,000 in a single business day.   The CTR indicated that it was Gurjeet Singh who conducted the transaction.

17. Between January 8, 2004 and December 17, 2004, there were approximately 27 CTRs filed by Citibank FSB, located at 1000 Vermont Avenue, NW, in Washington, DC and 4 CTRs filed by Chevy Chase Bank, located at 925 15th Street, NW, Washington, D.C. related to deposits and withdrawals of cash into/from accounts held in the name of Continental Beverage LLC.   Of the 31 CTRs filed during the above referenced time frame, at least 8 CTRs were filed related to transactions conducted by Gurjeet Singh.

## Conclusion

18. I respectfully submit that the facts set forth above make out probable cause to believe that from September 5, 2006 through January 30, 2007, cash deposits totaling $294,500 were structured into M&T Bank account number xxxxxx2416 in order to evade the requirement to report cash deposits of $10,000 or more.   To the extent that funds in the amount up to $294,500 are now in the Continental Beverage LLC account, M&T Bank Account number xxxxxx2416, they represent the same or fungible property found in the same place or account from which the property involved in the offense was deposited, within the one-year period after September 5, 2006, and are therefore subject to forfeiture pursuant to Title 18 U.S.C. §984.

19. Therefore, I request the issuance of a seizure warrant for the following personal property:   Funds on deposit and credit to account number xxxxxx2416 held in the name of Continental Beverage LLC, held at M&T Bank up to $294,500.

7

The statements above are true and accurate to the best of my knowledge and belief.

_/s/_____

Christine M. Morrison
Special Agent
Internal Revenue Service, Criminal Investigations

Subscribed to and sworn before me on this _____ day of June, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 07-1658 (PLF)** |
| | ) | |
| **$123,518.73 in UNITED STATES CURRENCY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |
| **ASHOO BHALLA & GURJEET SINGH,** | ) | |
| | ) | |
| **Claimants.** | ) | |
| _____ | ) | |

## <u>ORDER</u>

This matter came before the Court on the motion of plaintiff United States for summary judgment in this *in rem* civil forfeiture action.  Because plaintiff's motion, supporting statement of uncontested facts, and memorandum of points and authorities permit this Court to decide the summary judgment motion, for the reasons cited in the plaintiff's motion, its related pleadings, and attachments, and upon consideration of the entire record herein, it is by the Court this _____ day of _____ 2008,

ORDERED, that plaintiff's motion for summary judgment is granted in plaintiff's favor.


_____
PAUL L. FRIEDMAN
UNITED STATES DISTRICT JUDGE