UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 07-1658 (PLF) |
| $123,518.73 in UNITED STATES CURRENCY, | ) |
| Defendant. | ) |
| ASHOO BHALLA & GURJEET SINGH, | ) |
| Claimants. | ) |

PLAINTIFF'S REPLY TO CLAIMANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

*COMES NOW*, plaintiff United States of America, by and through its attorney, the United States Attorney for the District of Columbia, to reply to Claimants' Opposition To Plaintiff's Motion For Summary Judgment. In furtherance whereof, plaintiff submits as follows:

BACKGROUND

This is a civil action *in rem* to forfeit funds seized from a convenience store's bank account in Washington, D.C., in June 2007. The complaint, filed September 19, 2007, alleged that the defendant funds should be forfeited because of cash deposits into the bank account made some 30 or more times in amounts of precisely $9,500 in cash – in violation of federal "anti-structuring" laws at 31 U.S.C. §§ 5324(a)(1) and 5324(a)(3). This subjected the money to forfeiture under 31 U.S.C. § 5317(c)(2).

Federal anti-structuring laws require that a Currency Transaction Report ("CTR") be filed

whenever a cash deposit of more than $10,000 is made at a U.S. financial institution. See 31 U.S.C. § 5313(a), and 31 C.F.R. Part 103. 31 U.S.C. §§ 5324(a)(1) and 5324(a)(3) make it unlawful (1) to cause or try to cause a financial institution to fail to file a CTR; and, (2) to structure cash deposits to evade the requirement to file a CTR, respectively.

In November 2007, claimants Ashloo Bhalla and Gurjeet Singh entered this case to oppose the forfeiture. See Document No. 2. Between them, they owned and operated Continental Beverage LLC, the corporation from whose account the defendant funds were seized. See Statement Of Material Facts As To Which There Is No Genuine Dispute ("Facts") at ¶ 6. There are no other parties to the case, and it is too late for anyone else to enter it. See Facts at ¶ 19.

On December 18, 2007, the government moved for summary judgment, which claimants opposed in a pleading filed on January 11, 2008. See Document Nos. 6 and 7. Supporting the government's Motion for Summary Judgment were 19 separate assertions of material facts as to which there is no genuine dispute, and two affidavits from Special Agent Christine Morrison. Id. at 3-6; Document No. 6-2 ("Morrison affidavit"); Document No. 6-3 ("Warrant affidavit"). Many of the material facts came from Mr. Singh's interview with law enforcement agents, during which he acknowledged that he and his employees regularly and deliberately structured the corporation's deposits so that the deposits consisted of exactly $9,500 in cash, and never over $10,000. See Morrison affidavit at ¶¶ 13-14. Mr. Singh told investigators that one of the reasons the deposits were exactly $9,500 was to avoid having an employee who made the deposits, J.R., delayed while the form was completed. Id. Mr. Singh told law enforcement that Western Union had spoken with him about the CTR requirements, but that an individual from M&T Bank was

the first person to speak with him about CTRs. Id. at ¶ 15.

Claimants' opposition to the government's Motion for Summary Judgment included a section headlined, "Statement of Contested Material Facts" and appended Mr. Singh's affidavit.[1] See Document No. 7-4 ("Contested Facts"); Document No. 7-3 ("Singh affidavit").  Claimants concede all of the plaintiff's factual statements, except for four Facts, specifically Facts 9, 15, 16, 18 ("Claimants accept the factual allegations as made in the Statement of Material Facts as to Which There is No Genuine Dispute filed by Plaintiff except as noted in the accompanying Statement of Contested Material Facts.")  See Document No. 7 at 1.  Therefore, the Court may treat the facts proffered in support of summary judgment as conceded, except, according to claimants, Facts 9,15,16, and 18.

In opposing summary judgment, claimants confirmed (through Mr. Singh's affidavit) that Continental Beverage made 31 deposits of precisely $9,500 in cash for a total of $294,500 in structured deposits.  See Singh affidavit ¶¶ 2, 14 ("From January 2004 until the fall of 2006 it was our business practice to make a bank deposit when $8,500 in cash had accumulated. . .

---

[1] Claimants' opposition did not include an affidavit from Mrs. Bhalla, and statements in the opposition or Mr. Singh's affidavit about Mrs. Bhalla's (or anyone else's) knowledge or intent cannot be regarded as proper or competent – much less admissible – of either.  LCvR 7(h) requires that an opposition to a summary judgment motion be accompanied by "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."  Cf. Fed. R. Civ. P. 56(e) ("an adverse party may not rest upon the *mere allegations or denials* of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific facts showing that there is a genuine issue for trial*.") (emphases added).  Here, the corporation is the owner of the defendant funds, and Mrs. Bhalla's knowledge, or lack thereof, regarding the CTR requirements is irrelevant under the principles of corporate liability.  See Document No. 6 at 7-8.  For these reasons, she cannot assert an "innocent owner" defense pursuant to 18 U.S.C. § 983(d).  See Document No. 7 at 5.

Sometime in the fall of 2006 I noticed that the amount of the deposits had been increased to a regular amount of $9,500. . . I was comfortable with that amount and acquiesced without comment."). In short, claimants confirmed the existence of structuring the deposits.

## ARGUMENT

### I. Mr. Singh's Inconsistent Statements Without Explanation Do Not Create Genuine Issues of Fact.

"A party may not create a *genuine* issue of fact by contradicting his own earlier statements, at least [not] without a plausible explanation for the sudden change of heart." Cook v. Babbit, 819 F. Supp. 1, 21 (D.D.C. 1993) (quoting Richardson v. Bonds, 860 F.2d 1427, 1433 (7th Cir. 1988)) (emphasis in original). "While it is not the function of the court on summary judgment to weigh evidence or determine credibility issues between different witnesses or parties, . . . the rejection of statements that are implausible and contrary to other statements made *by the same person* is 'not a credibility determination but rather [the] recognition of a sham issue.'" Id. (quoting Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365 (8th Cir. 1983)).

Claimants' opposition fails properly to identify or articulate genuinely disputed material facts that warrant expending the Court's resources on a trial. Summary judgment is the proper, and favored, vehicle to sort out legal disputes short of trial in civil cases whenever this can be done. Invoking talismanic assertions about factual issues of intent or knowledge is not, by itself, enough to throw a purely legal decision at a jury panel. Merely framing an issue in terms of disputed intent or knowledge should not obscure the Court's view of the complete picture. The picture shows that Continental Beverage structured its banking deposits of cash – more than 30

4

times – so that the bank would not make reports of cash deposits of more than $10,000. Therefore, the defendant funds are subject to forfeiture as a matter of law.

The inconsistencies between Mr. Singh's statements to law enforcement and the contradictory statements in his affidavit show that the "contested material facts" raised in claimants' opposition were created for the purposes of litigation, and are not actual issues of material fact. Claimants admit that Mr. Singh was interviewed by law enforcement in June 2007. See Document No. 7 at 1; Document No. 6 at ¶ 8. Curiously, neither claimants' opposition, nor Mr. Singh's affidavit, deny that Mr. Singh made statements to law enforcement during that interview concerning his knowledge of the CTR requirements and intent to structure as set forth in Agent Morrison's affidavit. Indeed, claimants' opposition does not even acknowledge the existence of any inconsistencies between Mr. Singh's two statements, much less explain the reason for the discrepancies. In fact, Agent Morrison's affidavit referencing Mr. Singh's interview with law enforcement is ignored in claimants' opposition documents.

Claimants give no explanation whatsoever as to why Mr. Singh now makes generalized denials regarding his alleged lack of knowledge of the CTR requirements, and intent to structure, when he was quite specific before. Without explanation as to the inconsistencies, claimants now deny the "Facts" set forth in paragraphs 15, 16, 18 relating to Mr. Singh's knowledge and intent.[2] See Document No. 7 at 1. These new denials inconsistent with earlier statements, are an eleventh hour effort to manufacture "material facts in issue."

---

[2] Claimants also dispute Fact No. 9, however, that paragraph does not relate to Mr. Singh's knowledge or intent. There does not appear to be a material dispute between the parties that Mr. Singh was an owner and manager of the business, and that I.R. and J.R. were employees of Continental Beverage. See Contested Facts at ¶ 1; Facts at ¶¶ 10, 13.

In June, 2007, when asked by law enforcement why the corporation structured its cash deposits at $9,500 each, Mr. Singh explained that structuring the cash deposits allowed the employee, J.R., who did not have proper identification, to avoid having to fill out a form. See Morrison affidavit at ¶ 13. In his recent affidavit, Mr. Singh denies any knowledge whatsoever of the CTR requirements, "[u]ntil sometime in 2006, I had never been informed about, or knew anything about, a Currency Transaction Report ("CTR")." See Singh affidavit at ¶ 3. Mr. Singh now also denies that he or anyone else at Continental Beverage ever thought to avoid those requirements ("I never discussed CTR's with any other person at Continental. To my knowledge and belief, no other employees of Continental had, or have, any knowledge regarding CTR's [sic].") Id. at ¶ 4.

Mr. Singh's new denials of knowledge of the CTR requirements and structuring intent does not make sense when coupled with the claimants' concession to the Facts in paragraph 17. This paragraph describes Mr. Singh's response to a law enforcement officer's follow-up question relating to his statements that J.R. did not have identification to fill out the form at the bank, and that it was easier on the employee to keep the deposits below $10,000. See Morrison affidavit at ¶¶ 13 and 16. When Mr. Singh was confronted with a prior CTR which had been completed when J.R. made a cash deposit over $10,000 into the corporation's Bank of America "lottery" account, Mr. Singh replied that completing a CTR for the lottery account would not be onerous because Continental Beverage had few cash deposits over $10,000 into that account. Id. at ¶ 17. By failing to deny that portion of Mr. Singh's statements to law enforcement, including that the lottery account rarely had cash deposits greater than $10,000 (which would not trigger a CTR filing requirement), (see Document No. 7-3 at ¶ 11), claimants cannot deny that Mr. Singh

previously acknowledged structuring in order to avoid having his employee deal with the CTR form.

Mr. Singh's new denials regarding his knowledge of the CTR requirements contradicts his admission in his affidavit that sometime in 2006, "a representative from Western Union" came to Continental Beverage and discussed CTRs with him. See Singh affidavit at ¶ 3. Here the structuring activity that occurred from September 5, 2007 until January 2007. Thus, for a least a portion of the time, Mr. Singh admits knowledge of the CTR requirements. In the June interview, Mr. Singh stated that the first individual that informed him of CTRs was someone at M&T Bank, and that he also had a conversation about CTRs with a representative from Western Union. See Morrison affidavit at ¶ 15.

Mr. Singh's most recent statements regarding his knowledge of CTRs and intent to structure are clearly inconsistent with what he told law enforcement officers in June 2007. Courts reject efforts by individuals to create contested material facts by changing their previous statements without a plausible explanation. Here, claimants ignored Mr. Singh's prior statements to law enforcement. They never addressed why these statements were misstatements. The Court should not consider those facts which claimants contend are "contested" as disputed. The previous statements given by Mr. Singh show the corporation's knowledge of the CTR requirements and the corporation's explanation about why the cash deposits were structured.

## II.  Eighth Amendment Excessive Fine Argument is premature.

The question of an unconstitutional excessive fine presupposes that forfeiture is proper, but asserts instead that a specific amount of forfeiture is too great. Claimants' argument here challenges not whether, but how much. An excessive fine contention, meritorious or not, argues

only in mitigation of forfeiture, not in opposition to it. Thus, claimants' Eighth Amendment analysis logically either concedes that forfeiture is proper, or it is premature and moot.[3] Thus, claimants have no basis to request a hearing on the issue, and their petition should be denied. See Document No. 8 ("Petition for Hearing").

Claimants assert that the Eighth Amendment to the U.S. Constitution supplies an affirmative defense to the forfeiture of all of the funds seized from Continental Beverage's M&T Bank account. In this view, the Eighth Amendment's prohibition of excessive fines precludes forfeiture of the full $123,514.73 in defendant funds. Claimants assert that forfeiture of the defendant funds would be "grossly disproportionate to the alleged conduct."[4] See Document No. 7 at 3. Of course, there is not a single "offense" at issue in claimants' conduct, but rather at least 31 separate instances of structured deposits of exactly $9,500 in cash between September 5, 2006 and January 30, 2007. See Facts at ¶ 3.

In any event, no decision from this Circuit holds in claimants' favor on this point, and other circuits have rejected the argument claimants make here. In United States v. Ahmad, 213

---

[3] Nor do claimants' arguments establish that full forfeiture is an excessive fine. See United States v. Ahmad, 213 F.3d 805, 816 (4th Cir. 2000) (burden is on the "party challenging the constitutionality of the forfeiture, to demonstrate its excessiveness.") Claimants also have failed to refute specifically that forfeiture is not excessive when the structuring occurred 31 times within five months. See 31 U.S.C. § 5324(d)(2) (doubling criminal penalty for structuring if it involved a pattern of any illegal activity involving more than $100,000 in a 12-month period); 31 U.S.C. § 5324(d) (each structuring offense carries maximum fine of $250,000 and five-year term of imprisonment); U.S. Sentencing Commission Guidelines Manual § 2S1.3(a)(2) & § 8C2.4.

[4] Mr. Singh contends that the seizure of the defendant funds caused Continental Beverage to close. See Singh affidavit at ¶ 19; Opposition at 4. On June 12, 2007, however, Mr. Singh told law enforcement a different story – that the business was already sold before the seizure of the defendant funds. See Morrison affidavit at ¶ 9. That information has since been confirmed by law enforcement.

F.3d 805, 811-819 (4th Cir. 2000), the Fourth Circuit ruled that the burden is on the "party challenging the constitutionality of the forfeiture, to demonstrate its excessiveness." Id. at 816 (citing United States v. Bajakajian, 524 U.S. 321 (1998); (Kennedy, J., dissenting); United States v. Ladum, 141 F.3d 1328, 1349 (9th Cir. 1998); United States v. 829 Calle de Madero, 100 F.3d 734, 738 (10th Cir. 1996); United States v. One 1970 36.9' Columbia Sailing Boat, 91 F.3d 1053, 1057 (8th Cir. 1996)).

Further, Ahmad upheld the civil forfeiture of the entire sum of $85,000 directly traceable to the structuring of cash deposits to evade reporting requirements. Id. at 817-818. Ahmad concluded that, as a matter of law, the claimant could not prevail in an Excessive Fines analysis. In finding the forfeiture constitutional, Ahmad specifically noted that the structuring had occurred on a number of occasions, and was not the result of a single violation. In this case, the claimants have acknowledged that they made deposits on 31 dates of precisely $9,500 in cash in a period of less than five months time. Cf. 18 U.S.C. § 5324(d)(2) (doubling criminal penalty for structuring if it involved a pattern of any illegal activity involving more than $100,000 in a 12-month period). Each such structuring offense carried a maximum fine of $250,000 and a five-year term of imprisonment under 31 U.S.C. § 5324(d).[5]

---

[5] Ahmad noted that it was unclear whether an Excessive Fines analysis even applied either to an *in rem* civil forfeiture, such as the one now before this Court, or to any forfeiture, civil or criminal, of property constituting the instrumentality of the committing unlawful acts, such as structuring. See United States v. Ahmad, 213 F.3d at 814-819 (if forfeiture of funds traceable to deposit-structuring offense constituted forfeiture of offense's instrumentality, then Eighth Amendment Excessiveness analysis does not apply). Ahmad added that "there is certainly a respectable argument that [forfeiting funds] directly traceable to structuring offenses is an instrumentality forfeiture[.]" Id. at 815 (but ultimately holding that forfeiture did not violate Eighth Amendment). Thus, claimants' entire second affirmative defense could be moot in this case, which is both an *in rem* civil forfeiture and a forfeiture of the funds used to commit a string of deposit-structuring crimes, that is, an "instrumentality" forfeiture.

Claimants err when asserting that there is "not the slightest allegation" that "Continental, or the [c]laimants were in any manner involved in criminal activity. The statute is solely an administrative reporting requirement." See Document No. 7 at 4. That assertion is fatally flawed because, of course, structuring is a crime. See 31 U.S.C. § 5324(d) (stating criminal penalties for "structuring transactions to evade reporting requirement"); United States v. Wynn, 61 F.3d 921 (D.C. Cir. 1995); and United States v. Simon, 85 F.3d 906 (2d Cir. 1996) (recognizing structuring as a crime). Indeed, Simon actually affirmed a conviction for the crime of structuring, in violation of 31 U.S.C. §§ 5322 & 5324, against a challenge to the sufficiency of the evidence. See United States v. Simon, 85 F.3d at 907. Wynn affirmed several criminal convictions, but overturned one for criminal structuring. Wynn v. United States, 61 F.3d at 927-928. Wynn did not throw out the structuring conviction because structuring is – or was – not a crime, but because the evidence failed to prove wilfulness. Id. As Wynn noted, however, its 1995 holding essentially had a milli-second shelf-life, because by then Congress already had amended the anti-structuring criminal law, 31 U.S.C. §5324, to eliminate a wilfulness element. Wynn v. United States, 61 F.3d at 928.

Quite apart from the maximum statutory penalties, the U.S. Sentencing Commission Guidelines Manual ("U.S.S.G.") shows that forfeiture of $123,514.73 is not an excessive fine for conduct involving more than $200,000 in unlawfully structured deposits. Under U.S.S.G. § 2S1.3(a)(2), violations of 31 U.S.C. § 5324 for structuring deposits of more than $200,000 carry a base offense level of 6 + 12 or 18. Because the structured deposits here exceeded $100,000 and the structuring was part of a pattern of unlawful activity occurring within 12 months, an additional two offense levels under U.S.S.G. § 2S1.3(b)(2) make the total offense level 20.

Assuming a Category I criminal history for the "structurer," the guidelines recommend a term of imprisonment of 33-41 months (without acceptance of responsibility). Further, under U.S.S.G. § 8C2.4, an offense level of 20 gives rise to a fine of up to $650,000 and $350,000 for a level 18.[6]

Under these circumstances, either no Excessive Fines analysis applies to this type of forfeiture or, if such a constitutional analysis obtains, then forfeiture of $123,518.73 is not grossly disproportionate to unlawful conduct that occurred 31 separate times and involved $294,500 in structured deposits.

## CONCLUSION

Claimants cannot create material facts in issue in order to avoid summary judgment by Mr. Singh changing his statements. Mr. Singh previously admitted both to knowing about CTR requirements, and explaining that the corporation structured its cash deposits to avoid the filing of a CTR. Further, claimants' Eighth Amendment excessive fine argument is premature, and their petition for hearing on the issue should be denied. Moreover, forfeiting approximately half of the funds that were actually structured is not excessive.

*WHEREFORE*, plaintiff prays this Honorable Court to grant summary judgment in plaintiff's favor and deny claimants' petition for hearing.

---

[6] U.S.S.G. § 8C2.4 establishes the Base Fine guideline without regard to acceptance of responsibility. See Application Note 2.

Respectfully submitted,

\_/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

\_/s/_____
WILLIAM R. COWDEN, D.C. Bar #426301
Assistant United States Attorney

\_/s/_____
DIANE G. LUCAS, D.C. Bar #443610
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W., fourth floor
Washington, D.C. 20530
(202) 514-7912
Diane.Lucas@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of January, 2008, a copy of (1) Plaintiff's Reply to Claimants' Opposition to Motion For Summary Judgment, will be served by means of the Court's ECF system on claimants' counsel, Mr. Douglas Meister, Esq., 6801 Kenilworth Avenue, Suite 400, Riverdale Park, MD 20737.

\_/s/_____
DIANE LUCAS
Assistant United States Attorney